# Ragland *v.* The State.

*Murder.*

(Decided April 30, 1914.   Rehearing denied July 2, 1914.
65 South. 776.)

1. *Criminal Law; Continuance; Absent Witness.*—In the absence of a showing that the testimony expected of the witnesses was material and competent, it was not error to deny a continuance because of the absence of witnesses who resided in another county.

2. *Same; Pleas; Filing; Withdrawal.*—It was not error nor an abuse of discretion to refuse to permit a defendant to withdraw a plea of not guilty for the purpose of filing a plea of misnomer.

3. *Jury; Venire; Quashing; Rates.*—Where defendant was a negro, a motion to quash the venire on the ground that the jurors were all white persons, and that there was an unlawful and unconstitutional discrimination against defendant on account of his race or color, cannot be sustained, in the absence of evidence showing discrimination in the drawing of the jury; no presumption being indulged that the law was violated in that regard.

4. *Homicide; Evidence.*—Where the testimony was not shown to be relevant otherwise, it was not error to refuse to permit a witness to testify as to who occupied the room with decedent on a certain night when she slept at a certain place.

5. *Same; Instructions.*—A charge asserting that unless the jury believe beyond a reasonable doubt that defendant willfully, deliberately,

maliciously and premeditatedly killed deceased, he could not be convicted of murder in the first degree, but might be found guilty of murder in the second degree, or of manslaughter, was abstract, and properly refused.

6. *Evidence; Opinion; Special Knowledge.*—Where it did not appear that defendant had any knowledge or notice of the misconduct of his wife at the time of the killing, or that certain other witnesses had any knowledge of such facts, it was not error to sustain objections to the questions asked such witnesses calling for their opinion as to deceased's character, or whether she had been guilty of certain misconduct shortly before she was killed.

7. *Appeal and Error; Harmless Error; Evidence.*—A defendant is not prejudiced by the court's refusal to permit a witness to testify as to who occupied the room with decedent on a certain occasion, where the witness subsequently testified that no one occupied the room with her that night.

APPEAL from Morgan Law and Equity Court.

Heard before Hon. THOMAS W. WERT.

John Ragland was indicted for murder, sentenced to be hanged, and he appeals. Affirmed.

The following is charge 2:

Unless you believe beyond a reasonable doubt that defendant willfully, deliberately, maliciously, and premeditatedly killed deceased, you cannot find him guilty of murder in the first degree, but you may find him guilty of murder in the second degree, or manslaughter in one of the degrees.

H. V. CASHIN, for appellant. Because of absent witnesses defendant was entitled to have his cause continued.—*Curtis v. State,* 63 South. 748; *Bush v. State,* 168 Ala. 77. The motion to quash the venire should have been granted.—§ 6, Const. 1901; § 1, Art. 14, U. S. Constitution; 100 U. S. 321; *Miller v. City of Birmingham,* 151 Ala. 469. Counsel discusses the assignments of error relative to refused charges, but cites no further authorities.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

MAYFIELD, J.—The defendant, a negro was indicted, convicted, and sentenced to death for the murder of his wife.

The evidence of the state shows without doubt, as does also the confession of the defendant, that he cut his wife to death on the public streets in the city of Decatur. The tragedy happened about 7 o'clock on Sunday morning.

The only assigned or probable cause of the killing was jealousy, and a belief on the part of the accused that the deceased had been unfaithful to him, that she had taken up with, and was living with, another man. There was, however, very little evidence of this fact, other than the statement of the defendant to the effect that the deceased confessed this to him and declined to live with him, and that he was thereby so incensed and enraged that, in a fit of madness or insanity, he killed his wife.

There was certainly no delay in the prosecution of this case; the defendant's trial was speedy; and the severest punishment which the law can inflict has been decreed against him. The defendant killed the deceased on September 14, 1913, and was arrested and placed in jail a few minutes after the tragedy. He was indicted on the 22d of September, 1913, and arraigned on the same day, and his trial was set for the 25th of September, three days thereafter; but on motion of the defendant's counsel the trial was passed until the 26th, one day thereafter.

The defendant's counsel applied for a continuance, in order to allow him time for preparation for trial, and in which to obtain witnesses for the defense. It appears that the witnesses desired lived in Madison county, and subpœnas were issued for these witnesses; but the sheriff returned the subpœnas, "Not served, for want of time."

If it had been shown that these witnesses were material ones, and that their testimony would be competent, we are not prepared to say that the forcing of the defendant to trial without these witnesses was not such an abuse of discretion as to amount to a denial of the defendant's constitutional rights. What was said in *Bush's Case,* 168 Ala. 77, 81, 82, 53 South. 266, 268, in this connection, is applicable here:

"While the Constitution guarantees to all persons charged with crime compulsory process for their witnesses, and consequently neither the Legislature nor the courts should be allowed to deprive them of this right, yet we cannot say that the defendant was wrongfully deprived of this constitutional right by the court in this case. It is not made to appear that the witness in question could have been brought into court by compulsory process. * *. * A trial court cannot legally, and should not in any event, deprive the accused of constitutional right to compulsory process to obtain the attendance of witnesses, and an offer by the court to give the defendant such compulsory process, or the issuing of such process for him, when it is perfectly evident that it will be unavailing without staying the trial or continuing the case until the witness could be brought into the court under the process, would be depriving the defendant of the right to such process, as much so as absolutely declining to have it issued for him. For the same reason, the accused is not denied constitutional right to compulsory process for the witness, if it clearly appears that such process would be wholly unavailing, and for that reason wholly unnecessary and improper. Trial courts should not be compelled to do things which are wholly futile and useless. For these reasons, we cannot say that the court erred in declining to continue the cause on defendant's motion, or that in so doing defendant was denied any constitutional right."

[Ragland v. The State.]

It is not made to appear in this case that the evidence of the witnesses desired would have been relevant or material. So far as it is made to appear by this record, the witnesses, if obtained, would have been of no service to the defendant or to the trial. We are not advised of any information or knowledge possessed by them which would have been material or of interest on the trial. For these reasons we cannot say that there was error in respect to forcing the defendant to trial without the presence of these witnesses.

The defendant moved to quash the venire, on the ground that the defendant was a negro and the jurors were all white persons, and hence that there was an unlawful and unconstitutional discrimination against him on account of his race or color. No evidence or showing was offered in support of the motion, and neither the trial court nor this court will presume that the officers of the law violated either the state or the federal Constitution or statutes in the selecting or drawing of persons as jurors to constitute the venire in this case. There was no error in overruling the motions to quash the grand and petit juries.

There was no error in overruling the demurrer to the indictment. The indictment practically followed the Code form, and was sufficient. The last three counts of the indictment were eliminated, however, during the trial, which prevented any possible variance as to the means or the instrument causing the death.

There was no error in declining to allow the defendant to withdraw his pleas of 'not guilty,' and 'not guilty by reason of insanity,' and interpose the plea of misnomer. This was a matter discretionary with the trial court, and we see no abuse of the discretion.

We can see no error in the court's declining to allow the witness Mary Stewart to testify as to who occupied

the room with deceased on the night which the deceased spent there. Such testimony was not shown to be relevant, and, even if it was, the witness subsequently testified that no one occupied the room with the deceased on that occasion.

There was no error in declining to allow the witnesses Phil Williams and J. W. White to testify as to whether or not the deceased was living in adultery shortly before she was killed. At this stage of the trial it was not shown that defendant had had any knowledge or notice of such relations on the part of his wife, if such she had been guilty of; nor was it shown that these witnesses had any knowledge of such illicit relations, or any knowledge of facts which would tend to show that they had existed. Each was merely asked for his opinion concerning the character of the deceased as to chastity or adultery.

Charge 2, requested by the defendant, was a correctly refused charge, because abstract.

The other charges refused to the defendant were properly refused. They were severally either argumentative, involved, misleading, or covered by charges given at the request of the defendant.

Affirmed. All the Justices concur.